UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL S. BAREFIELD, SR., Plaintiff, v. K. GIBBS, Defendant. | No. 2:23-cv-1312-DC-EFB (PC) FINDINGS AND RECOMMENDATIONS |

Plaintiff is a state prisoner proceeding without counsel in an action brought under 42 U.S.C. § 1983. His first amended complaint (FAC) alleges a First Amendment claim for mail interference against defendant K. Gibbs, who was employed as a mailroom supervisor at Mule Creek State Prison (MCSP) during the relevant period. ECF No. 11. For the reasons set forth below, the undersigned recommends that defendant's motion for summary judgment be granted.

**BACKGROUND**

The FAC alleges that plaintiff did not receive mail and stamps, and other items because of defendant's interference with his mail. *Id.* at 4. According to his deposition testimony, he failed to receive the following items: (1) a Father's Day card from his sister that was mailed in June 2021; (2) a birthday card from his father that was mailed in September 2021; and (3) a letter from his father that contained postage stamps in November 2021. ECF No. 31-6 at 7; ECF No. 31-2 at 8. A fourth item of mail that plaintiff attempted to send to his son was not mailed and was

returned to him. ECF No. 31-2 at 8. The FAC further alleges intentional and deliberate withholding of administrative response that prevented him from filing timely grievances. *Id*.

**MOTION FOR SUMMARY JUDGMENT**

A. Summary Judgment Standard Under Rule 56

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

Under summary judgment practice, the moving party "initially bears the burden of proving the absence of a genuine issue of material fact." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that the adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B).

When the non-moving party bears the burden of proof at trial, "the moving party need only prove that there is an absence of evidence to support the nonmoving party's case." *Oracle Corp.*, 627 F.3d at 387 (citing *Celotex*, 477 U.S. at 325); *see also* Fed. R. Civ. P. 56(c)(1)(B). Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *See Celotex*, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, . . ., is satisfied." *Id.* at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. *See Matsushita*

*Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. *See* Fed. R. Civ. P. 56(c)(1); *Matsushita*, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, *see Wool v. Tandem Computers, Inc.*, 818 F.2d 1433, 1436 (9th Cir. 1987), *overruled on other grounds as stated in Flood v. Miller*, 35 F. App'x 701, 703 n.3 (9th Cir. 2002).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv.*, 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita*, 475 U.S. at 587 (citations omitted).

"In evaluating the evidence to determine whether there is a genuine issue of fact," the court draws "all reasonable inferences supported by the evidence in favor of the non-moving party." *Walls v. Central Costa County Transit Auth.*, 653 F.3d 963, 966 (9th Cir. 2011). It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. *See Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted).

////

B. The Evidentiary Record

According to defendant's declaration, each of the four items of mail in question were disapproved for delivery – in part or in whole – based on prison policies. ECF No. 31-5 at 2 ¶ 3.

As to the three items of incoming mail, defendant submits plaintiff's responses to her request for production asking for copies of "Form 1819" that plaintiff received to notify him the mail had been disapproved. ECF No. 31-6 at 20-24. Form 1819 is used by the California Department of Corrections and Rehabilitation (CDCR) to inform prisoners of such disapproval. ECF No. 31-5 at ¶ 3. The inmate is to return the Form 1819 within 30 days and select one of three options 1) hold the mail pending an appeal, 2) return it to sender, or 3) destroy it. *See id.*, ECF No. 31-6 at 22, 23, 24.

Plaintiff's production of Form 1819 for the three items of incoming mail indicates that he did receive the forms, although it appears he did not fill out the portion of the forms that indicates his choice of what to do with the mail. ECF No. 31-6 at 22-24; *see also id.* at 8 ll. 20-25 (plaintiff's deposition testimony). The forms are all dated in 2023, indicating an extraordinary time lag with regard to the mailings that were made in 2021. ECF No. 31-6 at 22-24. Defendant declares that "processing of mail at MCSP during the period of 2021 – 2023 was delayed due to the COVID-19 pandemic [], and staffing shortages[.]" ECF No 31-5 at 4 ¶ 11.

It appears from these forms that only some of the contents of the three items of incoming mail were disallowed. The information and reasons for disallowance as stated on the forms are as follows:

1) "26 stickers" inserted in an item of incoming mail were disallowed because "stickers are not allowed." This item of mail was sent by "Logan" (presumably plaintiff's sister). This Form 1819 was signed by "S. Townsend" on April 18, 2023 and reviewed by Captain "A.W. Stacy" on April 20, 2023. ECF No. 31-6 at 23.

2) An item of mail contained 60 stamps; 40 stamps were the allowable limit and the remaining 20 were disallowed. The mail was sent by "Finas D. Barefield Jr." (presumably plaintiff's father). This Form 1819 was signed by "S. Townsend" on May 5, 2023 and reviewed by Captain "A.W. Stacy" on May 11, 2023. *Id.* at 24.

3) Plaintiff received the "contents" of an item of mail including 20 stamps, but a card with glitter was withheld and not given to plaintiff. This item of mail was sent by "Barefield" (presumably plaintiff's father). This Form 1819 was signed by "C. Vieira" on December 20, 2023 and reviewed by Captain "A.W. Stacy" on December 21, 2023. *Id*. at 22.

As for the item of outgoing mail which is also the subject of plaintiff's claim, it was apparently a "hobby craft item" consisting of a drawing on canvas that plaintiff sought to mail to his son. *Id*. at 16 (plaintiff's answer to interrogatories). Defendant rejected this item three times, on the grounds that "hobby craft" may not be mailed through the mailroom, but must be sent to "R&R." *Id*.; *see also id*. at 37-38 (written communications between plaintiff and defendant). Plaintiff disputed defendant's interpretation of policy on this point. *Id*. at 37 (plaintiff wrote to defendant that "Sec. 101050 states that as long as I meet First Class mail and weight it can be sent as reg mail"); *see also id*. at 17 (plaintiff describes the item as having the proper postage, not exceeding 13 ounces and not oversized). The record implies that the outgoing item of mail was ultimately sent, apparently through "R&R." *Id*. at 17 (plaintiff would have liked for it to have been mailed two weeks earlier, in time for his son to receive it before a funeral).

Plaintiff's attempts to grieve these issues are discussed below.

The record also indicates that plaintiff produced in discovery some meeting minutes of the "IAC" which the court construes as a reference to the Inmate Advisory Council. *Id*. at 28-35. It appears from these documents that in about 2024 and 2025 plaintiff served as the IAC secretary and he created the meeting minutes. Most of the meetings were attended by both plaintiff and defendant. According to the meeting minutes, various technical details of mail policy were discussed by the inmate representatives and prison staff.

C. <u>Merits of the Motion</u>

Gibbs argues that plaintiff failed to exhaust available administrative remedies. ECF No. 31-2 at 7-10. She maintains that his claim against her is based on her supervisory role, and that she did not personally handle plaintiff's three items of outgoing mail. *Id*. at 13-16. She further argues that plaintiff has not shown evidence of retaliatory motive or that his First Amendment rights were chilled, or that there was no legitimate penological goal for actions taken by mailroom

staff. *Id*. at 16-22.

The court finds that plaintiff failed to exhaust available administrative remedies and that this is sufficient reason to grant summary judgment in favor of defendant, and that defendant's other arguments also independently support entry of judgment in her favor.

1. <u>Grievance Exhaustion</u>

Plaintiff filed two grievances related to mail handling at MCSP. Neither of these grievances exhausted any issue with respect to any of the four mailings that are at issue in his lawsuit. ECF No. 31-2 at 10-11; 13-16. The first grievance presented a different issue altogether. The second grievance was initiated only after plaintiff filed this lawsuit and only addressed the glitter card disallowance. Neither grievance mentions the item of outgoing mail that is included in plaintiff's claim – i.e., the hobby craft item that plaintiff mailed to his son. These are sufficient reasons to grant defendant's motion for summary judgment, as described below.

The first grievance was filed in about November 2021 and was assigned the log number 192030. ECF No. 31-4 at 3 ¶ 9 (Moseley Declaration); *id*. at 6 (plaintiff's grievance and appeal history indicates the grievance was received 11/30/2021). It complained that plaintiff had not received a birthday card, a book, and stamps mailed in September and November 2021. *Id*. at 3 ¶ 9. Plaintiff described the topic of his grievance as "mail not being delivered" and the action he requested was that he "would love to talk to who is in charge of mail to find out why we are so behind. It is frustrating and a harm to my mental health. I will sue with the other inmates if this is not addressed." *Id*. at 16. The grievance was denied at the first level of review, apparently on grounds of delivery delays at the U.S. Post Office and that mail was being processed within guidelines at the prison. *Id*. at 13. Plaintiff appealed. He noted in his appeal that his father had called the U.S. Post Office and was informed that prison officials were picking up mail there which suggested to him that delays were occurring after the mail arrived at the prison. *Id*. at 9-10. His appeal was denied as "Time Expired" because it was not addressed within the 60 days required for substantive response. This means that the first level decision was made final. *Rivas v. Koenig*, No. 24-cv-0007-JST, 2024 WL 4894295, at *2 (N.D. Cal. Nov. 25, 2024) (citing 15 Cal. Code Regs. § 3485(g)(10)); *see also Brannon v. Covarrubias*, No. 22-16728, 2024 WL

1253788, at *2 (9th Cir. Mar. 25, 2024) (an appeal marked as "time expired" did not cure untimeliness of underlying grievance and so did not necessarily establish grievance exhaustion). Plaintiff's argument that the "time expired" designation effectively made administrative remedies unavailable to him, is simply incorrect. *See* ECF No. 3 at 3-4. His first grievance was accepted, and the first level decision was made final because CDCR officials did not process the appeal within the allowed time.

Defendant argues that the first grievance did not exhaust plaintiff's administrative remedies for his claim against her because 1) it did not name her as the cause for non-delivery of mail, and 2) it did not give notice of the wrong that plaintiff alleges in this lawsuit, which is that his mail was delayed or denied in violation of his rights under the First Amendment. ECF No. 31-2 at 14.

The court finds that the issue plaintiff presented in his first grievance is not the same as he alleges in this lawsuit, regardless of whether he identified defendant as the person responsible for his issue. His grievance alleges tardy or no delivery of three items of mail as of November 2021.[1] But his claim here is that he was notified in 2023 of disallowance of part of the contents of three items of mail, namely 26 stickers, 20 out of 60 stamps, and a glitter card. When he filed the first grievance in 2021, he had not yet received any Form 1819 informing him of the disallowed items. The non-delivery or tardy delivery that was the subject of his first grievance is not the basis of his claim here, and for this reason plaintiff did not exhaust the issue that is the subject of his lawsuit. *See O'Guinn v. Lovelock Correctional Center*, 502 F.3d 1056, 1062-63 (9th Cir. 2007) (even liberally construed, grievance requesting a lower bunk bed for balance and brain injury reasons did not exhaust a claim for denial of mental health treatment in violation of the Americans with Disabilities Act).

/////

[1] Only two of the three items of incoming mail that were the subject of the 2021 grievance appear to be among the three items of incoming mail that are the subject of this lawsuit, because one of the items mentioned in the grievance was an item of mail containing a book. ECF No. 31-4 at 16. But this discrepancy is immaterial in light of the more significant mismatch between the issue that plaintiff grieved versus his claim in this lawsuit.

The second grievance was filed on January 9, 2024 (after plaintiff filed this lawsuit) and was assigned the log number 502986. ECF No. 31-2 at 11; ECF No. 31-4 at 3 ¶ 9 (Moseley Declaration); *id*. at 6. This grievance was about the disallowance of the glitter birthday card. Plaintiff disputed whether the correct policy provision had been applied. ECF No. 31-4 at 34-35. Plaintiff named both defendant and C. Vieira (whose signature appears on two of the 1819 forms). *Id*. at 32. The response at the first level and on appeal was that policy does not allow delivery of glitter. *Id*. at 19, 31. Plaintiff exhausted this grievance. *Id*. at 19. But he neither initiated nor exhausted it before filing this lawsuit. *See* ECF No. 31-2 at 10. By grieving the issue after filing his lawsuit, he effectively deprived prison authorities of the opportunity for investigation and remediation, which is the very purpose of requiring administrative exhaustion. *See Brown v. Valoff*, 422 F.3d 926, 934-935 (9th Cir. 2005). For this reason, this grievance does not establish administrative exhaustion with respect to the glitter card mailing. *Id*. at 942-943 (prisoner who filed complaint before completion of staff misconduct investigation did not exhaust available administrative remedies).

2. <u>Supervisory Liability</u>

"A supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them. There is no respondeat superior liability under section 1983." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (citation omitted). "A supervisor may be liable if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989) (citation omitted).

Defendant's communications with plaintiff about the proper procedure for mailing his hobby craft to his son clearly show her personal involvement with respect to that matter, but there is no plausible evidence on this record that defendant was personally involved in disallowing any of the three items of plaintiff's incoming mail.[2] *See* ECF No. 31-5 at ¶¶ 5-7 (defendant declares

[2] Plaintiff also has not shown that defendant is responsible for promulgating the prison regulations and policies that required disallowance of the 26 stickers and the glitter card, and that limited the number of stamps to 40. See ECF No. 31-5 at 2 ¶ 2 (defendant declares she adhered

that she did not "seize, withhold, or interfere with" plaintiff's three items of incoming mail). Plaintiff indeed acknowledges that his claim against defendant is based on her supervisory role. ECF No. 34 at 3 ("As the Mailroom Manager, Gibbs was responsible for the oversight of all incoming mail."). Plaintiff cites *Starr v. Baca*, 652 F.3d 1201 (9th Cir. 2011) in arguing that there is a sufficient causal connection between defendant's "wrongful conduct" and the alleged constitutional violations. ECF No. 34 at 3. But he has not shown the sort of supervisory involvement described in *Starr*, where a sheriff received weekly reports and detailed information about many specific incidents of violence at the jail. 652 F.2d at 1209-1212. This is a sufficient, independent reason to grant defendant's motion for summary judgment as to his claim regarding disallowance of some of the contents of his incoming mail.

Plaintiff also argues that he should be given the opportunity to have defendant's testimony and cross-examination at trial, to test her declaratory assertions that she did not have personal involvement and because the court denied as untimely his motion to compel discovery on this topic. ECF No. 34 at 4; ECF No. 33 at 2; *see also* ECF No. 35 at 4 (defendants argue that it was plaintiff's responsibility to conduct timely discovery). His untimely discovery requests also sought to adduce evidence to "prove Defendant's oversight failures." ECF No. 34 at 4. Whether or not his untimely discovery requests might have yielded probative evidence of personal involvement or supervisory liability and regardless whether plaintiff might be able to cast doubts on defendant's declaration through testimony at trial, plaintiff has failed to show a genuine issue as to his failure to exhaust administrative remedies, which is a separate and independent reason to grant summary judgment in favor of defendant.

---

to policies of the California Department of Correction and Rehabilitation, "specifically California Code of Regulations Title 15, the Department Operations Manual (DOM), and the Department Operations Manual Inmate Mail Supplement at MCSP.") According to her declaration she was merely familiar with the policies, as a "former Office Services Supervisor II." ECF No. 31-5 at ¶ 2. *See Human Rights Defense Center, Inc. v. Uttecht*, 161 F.4th 1141, 1154-1155 (9th Cir. 2025) (injunctive relief prohibiting enforcement of mail policies could be awarded against Oregon prison superintendent in his official capacity, and not to the sergeant who was required to follow those policies). The court need not reach the question whether the policies in question were reasonably related to legitimate penological goals, *see Uttecht*, 161 F.4th at 1152, because plaintiff has not explicitly made this claim, has not sued the proper party to make such a claim, and has not otherwise shown a genuine issue for trial.

3. Plaintiff Has Not Shown a Violation of His First Amendment Rights

Plaintiff's First Amendment claim is that defendant withheld and/or refused to send his mail without legitimate reason. ECF No. 12 at 4; ECF No. 21 at 3. The question whether defendant violated plaintiff's First Amendment rights is necessarily limited to her conduct with respect to the outgoing mailing of the "hobby craft" item, because plaintiff has not shown a genuine issue as to whether defendant was personally involved with the handling of the three items of incoming mail that are also at issue in this lawsuit.

As to defendant's actions in returning plaintiff's outgoing mail with instructions to send it through "R&R", plaintiff apparently was able to mail the hobby craft item through the procedure that defendant directed him to use. Plaintiff has not shown that defendant interfered with or prevented him from mailing the hobby craft item, but rather the opposite. Defendant merely instructed him how to proceed. Plaintiff's apparent disagreement and his interpretation of the applicable DOM provision, see ECF No. 31-6 at 37, does not show that the alternative procedure defendant instructed him to use unconstitutionally interfered with his right to send mail. *See Witherow v. Paff*, 52 F.3d 264, 265 (9th Cir. 1995) (a prison regulation that affects outgoing mail need not satisfy any "least restrictive means" test, citing *Thornburgh v. Abbott*, 490 U.S. 401, 407 (1989)).

Defendant also argues that plaintiff has not shown retaliatory animus. ECF No. 31-2 at 18-19. Plaintiff did threaten to "sue with the other inmates" in his first grievance, ECF No. 31-4 at 16, but defendant declares she was not authorized to respond to this grievance, and she never threatened retaliation against plaintiff. ECF No. 31-5 at 3-4 ¶¶ 10, 12. Nothing in their written communications or the IAC meeting minutes can be construed as evidence that defendant threatened any adverse action. *See* ECF No. 31-6 at 37-38; *id.* at 28-35; *see also Brodheim v. Cry*, 584 F.3d 1262, 1271 (9th Cir. 2009) (a statement that "intimate[s] that some form of punishment or adverse regulatory action would follow a failure to comply" may be an adverse action). Plaintiff has not plausibly shown any genuine dispute as to whether defendant's instructions about how to send the hobby craft item were an actual adverse action motivated by retaliatory animus.

Nor has plaintiff produced evidence of any chilling effect that would objectively deter a person of ordinary firmness from exercising his First Amendment rights. *See Brodheim*, 584 F.3d at 1271 (chilling effect is assessed using an objective standard). Plaintiff's First Amendment claim fails for all these reasons, independent of plaintiff's failure to exhaust administrative remedies and his failure to plausibly show supervisory liability.[3]

**CONCLUSION**

Accordingly, it is RECOMMENDED that Defendant's motion for summary judgment, ECF No. 31, be GRANTED.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 95 F.2d 1153 (9th Cir. 1991).

DATED: August 31, 2026

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE

---

[3] The court need not address defendant's qualified immunity argument because it recommends that the claim against her be dismissed on the merits. *See County of Sacramento v. Lewis*, 523 U.S. 833, 841 n.5 (1998) ("[T]he better approach to resolving cases in which the defense of qualified immunity is raised is to determine first whether the plaintiff has alleged the deprivation of a constitutional right at all.").